**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NAPP TECHNOLOGIES, L.L.C., | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 04-3535 (WHW) |
| | : | |
| KIEL LABORATORIES, INC., | : | |
| | : | |
| Defendant. | : | |

|  |  |
|---|---|
| KIEL LABORATORIES, INC., | : |
| | : |
| Third-Party Plaintiff, | : |
| | : |
| v. | : |
| | : |
| SUPRIYA CHEMICALS, DASTECH | : |
| INTERNATIONAL, INC., | : |
| OMNISPECIALTY CORPORATION, | : |
| THOMAS SMITH (an individual) and | : |
| BERNARD ARONSON (an individual), | : |
| | : |
| Third-Party Defendants. | : |

__Walls, Senior District Judge__

This action arose from the sale of a pharmaceutical compound called Pyrilamine Maleate, USP ("Pyrilamine") by Napp Technologies to Kiel Laboratories ("Kiel"). In July 2004, Napp Technologies sued Kiel alleging breach of contract for failing to pay for the shipment of Pyrilamine. Kiel filed a Third-Party Complaint naming Supriya Chemicals ("Supriya") as one of

**NOT FOR PUBLICATION**

several third-party defendants.  Kiel alleged that Supriya manufactured and supplied out-of-specification Pyrilamine causing Kiel to incur nearly $ 4 million in damages.  In August 2007, all parties, with the exception of Supriya, entered into a settlement agreement dismissing all claims by and against the settling parties.  Pursuant to Fed. R. Civ. P. 55, Kiel now moves for a default judgment against Supriya.  Supriya has not opposed the motion.  On December 4, 2008, the movant appeared before the Court for a hearing on damages pursuant to Fed. R. Civ. P. 55(b)(2).  Kiel's motion is granted.

<strong>FACTS AND PROCEDURAL HISTORY</strong>

Kiel, a Georgia corporation, manufactures and distributes a variety of pharmaceutical products, including cold and cough medications.  (Am. Third-Party Compl. ¶ 4 (No. 50).)[1]  In June 2003, Kiel placed an order for Pyrilamine, an antihistamine and active ingredient for Kiel's cold and cough medications, with Napp Technologies ("Napp"), a New Jersey corporation.  (Id. ¶¶ 10, 11, 18.) Napp filled that order with Pyrilamine manufactured by Supriya, a foreign corporation located in Mumbai, India, through Supriya's distributor, Dastech International, Inc. ("Dastech"), a New York corporation.  (Id. ¶¶ 6, 12-13, 15, 19.)  Using the Pyrilamine, Kiel manufactured several batches of cold and cough medications. (Id. ¶ 22.)  During the final testing, Kiel discovered that the medications had failing data which rendered them useless.  (Id. ¶ 23.) Kiel ultimately determined that the source of the failure was the Pyrilamine manufactured by Supriya.  (Id. ¶ 24.)

On July 23, 2004, Napp filed suit against Kiel in this Court for payment that Kiel

---

[1] "No. __" refers to the document number in the electronic docket for this case.

**NOT FOR PUBLICATION**

withheld as offsets for the damages incurred from the defective Pyrilamine. (Compl. (No. 1).)
Kiel filed a competing action in the United States District Court for the Northern District of
Georgia against Napp, Supriya, Dastech and OmniSpecialty Corporation (Napp's corporate
parent).  (Br., at 3 (No. 78).)  Following Kiel's unsuccessful motion to dismiss or to transfer this
action to Georgia, the Georgia action was transferred to this Court and consolidated with the
present action on February 4, 2005.  (Id. at 4.)

Pursuant to Fed. R. Civ. P. 4(f)(3), this Court, by then Magistrate Judge Wigenton, issued
an order on May 19, 2006 ("May 2006 Order") permitting service upon Supriya by e-mail and
express mail.  (Order (No. 51).)  In June 2006, counsel for Kiel and counsel for Napp each sent
the parties' pleadings and discovery requests to Supriya in accordance with the May 2006 Order.
(DeSimone Cert., Exs. 17, 20 (Nos. 84-18, 84-21).)  Supriya has neither responded nor otherwise
defended throughout this action.

In August 2007, the parties, with the exception of Supriya, entered into a settlement
agreement and the Court entered a Stipulation and Order of Dismissal of all claims by and
against the settling parties.  (Stipulation and Order (No. 73).)  The Stipulation and Order
explicitly preserved all claims asserted against Supriya.  (Id.)  On May 27, 2008, Kiel brought
this motion for default judgment against Supriya.  (Mot. (No. 80).)  Specifically, Kiel seeks
damages in the amount of $3,982,660 ($1,177,745 for out-of-pocket costs plus $2,804,915 in lost
profits) incurred as a result of Supriya's breach, attorney's fees in the amount of $473,360, and
pre- and post-judgment interest on those costs, less the net settlement amount ($300,000)
received from the settling parties.  After reviewing Kiel's submissions, the Court ordered Kiel to

**NOT FOR PUBLICATION**

submit additional evidence and briefing to clarify three issues: 1) whether service of process on Supriya was properly effected and documented pursuant to this Court's May 19, 2006 Order and Fed. R. Civ. P. 4(l); 2) whether this Court has personal jurisdiction over Supriya; and 3) the factual bases for Kiel's damages claim.  (Order (No. 83).)  Kiel complied with the Court's Order on October 31, 2008.

## LEGAL STANDARD

Fed. R. Civ. P. 55(b)(2) governs a court's entry of default judgment.  The party against whom default judgment is requested must have been properly served with process.  Fed. R. Civ. P. 55(b)(2); Local Union No. 98, Int'l Bd. of Elec. Workers v. Cableco, Inc., No. 99-755, 1999 WL 269903, at *1 (E.D. Pa. Apr. 28, 1999).  Before default judgment may be entered by a court, the moving party must have obtained an entry of default pursuant to Fed. R. Civ. P. 55(a).  See 10A Wright, et al., Federal Practice & Procedure § 2682 (3d ed. 1998).

A party seeking default judgment is not entitled to such relief as a matter of right, even where the defendant was served with process and the default has been noted pursuant to Fed. R. Civ. P. 55(a).  See, e.g., Cableco, 1999 WL 269903 at *1 (citing Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1303 (3d Cir. 1995)).  The district court has the discretion to enter default judgment; entry of default judgments is disfavored as decisions on the merits are preferred.  See Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984). When considering a motion for default judgment, a court may consider the following factors: the potential amount of damages; whether issues of material fact or substantial public concern are implicated; whether the default is primarily technical; whether the moving party has been substantially prejudiced by

-4-

NOT FOR PUBLICATION

the delay involved; whether the grounds for default are clearly established or in doubt; whether the default was attributable to good faith, mistake, or excusable neglect; and whether the court may later be obliged to set aside the default. Franklin v. Nat'l Maritime Union of Am., No. 91-480, 1991 WL 131182, at *1 (D.N.J. July 16, 1991) (citing 10 Wright, et al., Federal Practice & Procedure § 2685 (2d ed. 1983)).

Although a court should accept as true the well-pleaded factual allegations of the complaint, it need not accept the moving party's legal conclusions, or factual allegations relating to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10 Wright, et al., Federal Practice & Procedure § 2688 (2d ed. 1983)). Consequently, before granting a default judgment, a court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Directv, Inc. v. Asher, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing 10A Wright, et al., Federal Practice & Procedure § 2688 (3d ed. 1998)). The Court must also "conduct its own inquiry 'in order to ascertain the amount of damages with reasonable certainty.'" Int'l Assoc. of Heat & Frost Insulators v. S. Jersey Insulation Servs., No. 05-3143, 2007 WL 276137, at *1 (D.N.J. Jan. 26, 2007) (quoting In re Indus. Diamonds, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000)).

**DISCUSSION**

1. **Entry of Default**

Entry of default by the Clerk is a prerequisite to a default judgment motion. To date, no default has been entered against Supriya. Rather than denying this motion because of this

**NOT FOR PUBLICATION**

deficiency, the Court will treat Kiel's motion as one which seeks (1) an Order directing the Clerk to enter a default against Supriya, and (2) entry of a default judgment.  See Systems Indus., Inc. v. Han, 105 F.R.D. 72, 74 (E.D. Pa. 1985) ("'Since the court has the authority to enter a judgment by default, it impliedly has the power to perform the ministerial function assigned to the clerk of entering a default.'") (quoting 10 J. Wm. Moore et al., Moore's Federal Practice ¶ 55.02[3], at 55-14 & n.1 (2d ed. 1983)).  Doing so does not change the Court's task: if a default judgment is appropriate, then it follows that the lesser requirements of Rule 55(a) are satisfied; if not, entry of a default by the Clerk would be beside the point.

> **2.      Service of Process**

Federal Rule of Civil Procedure 4(l)(1) provides: "Unless service is waived, proof of service must be made to the court.  Except for service by a United States marshal or deputy marshal, proof must be by the server's affidavit."  Id.  For service outside the United States, service must be proved "by a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee."  Fed. R. Civ. P. 4(l)(2).

Kiel's initial submissions in support of this motion did not include an affidavit attesting to completion of service upon Supriya; a review of the record also did not turn up any affidavits of service on Supriya.  The Court therefore ordered Kiel to submit such proof.  Kiel did so on October 31, 2008.  (DeSimone Cert., Exs. 15-17.  (Nos. 84-16 to 84-18).)  Kiel supplemented the proofs on November 21, 2008.  (Letter, Exs. A, B (No. 89).)  The Court finds that these proofs of service comply with Fed. R. Civ. P. 4(l)(2).

The Court must further determine whether Supriya has been validly served.  Federal Rules of Civil Procedure prescribe several methods of service on a corporation in a foreign

-6-

NOT FOR PUBLICATION

country.  Fed. R. Civ. P. 4(h)(2), 4(f).  A corporation located outside the United States may be

served: (1) by any internationally agreed means reasonably calculated to give notice such as the

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague

Convention"); (2) if there is no international agreement, by service that is reasonably calculated

to give notice; or (3) by other means not prohibited by international agreement as the court

orders.  Fed. R. Civ. P. 4(h)(2), 4(f).

By the May 2006 Order, Judge Wigenton permitted service on Supriya by express mail

and e-mail by June 2, 2006 under the last of the methods prescribed by Rule 4(f).  (Order (No.

51).)  Judge Wigenton found that no international agreement prohibits these forms of service and

that service by these methods is reasonably calculated to apprise Supriya Chemicals of the claims

against it.[2]  (Id.)  Mailing of summons and pleadings via express mail, which typically provides a

receipt of delivery, has been recognized as a proper method of service to individuals in India

under Rule 4(f)(2)(C)(ii).  See Polargrid LLC v. Videsh Sanchar Nigam Ltd., No. 04-CV-

9578(TPG), 2006 WL 903184, *3 (S.D.N.Y., Apr. 7, 2006).  The letters and receipt of delivery

submitted by Kiel indicate that the pleadings were delivered as ordered by this Court.

(DeSimone Cert., Exs. 15-17 (Nos. 84-16 to 84-18); Letter, Exs. A-B (No. 89).)  Accordingly,

the Court finds that Supriya has been validly served.

### 3.     Jurisdiction

Before entering default judgment against a defaulting party, district courts have an

_____

[2]  India subsequently became a signatory to the Hague Convention in 2007 with a declaration that it is opposed to, inter alia, the service by "postal channels."  See Status Table, Hague Convention available at http://www.hcch.net/index_en.php?act=authorities.details& aid=712.

NOT FOR PUBLICATION

affirmative obligation to inquire as to the propriety of exercising personal jurisdiction over the

absent party.  See Mwani v. Bin Laden, 417 F.3d 1, 6 (D.C. Cir. 2005); Tuli v. Republic of Iraq

(In re Tuli), 172 F.3d 707, 712 (9th Cir. 1999); Dennis Garberg & Assocs. v. Pack-Tech Int'l

Corp., 115 F.3d 767, 772 (10th Cir. 1997); see also 10 J. Wm. Moore, et al., Moore's Federal

Practice ¶ 55.37 (3d ed. 2008).  A judgment rendered by a court that lacked jurisdiction over the

defendant is void.  See Budget Blinds, Inc. v. White, 536 F.3d 244, 258 (3d Cir. 2008) (citing

Marshall v. Bd. of Educ., 575 F.2d 417, 422 (3d Cir. 1978)).  Therefore, a threshold inquiry into

whether the court may validly exercise personal jurisdiction over the absent defendant allows the

court to avoid entering a default judgment that may be set aside later.

Federal "district courts have personal jurisdiction over non-resident defendants to the

extent authorized under the law of the forum state in which the district court sits."  See Sunbelt

Corp. v. Noble, Denton & Assocs., 5 F.3d 28, 31 (3d Cir. 1993).  New Jersey's long arm statute

provides for personal jurisdiction as far as is permitted by the Fourteenth Amendment to the

United States Constitution.  See N.J. Civ. Prac. R. 4:4-4; Carteret Savings Bank, FA v. Shushan,

954 F.2d 141, 145 (3d Cir. 1992); DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d

Cir. 1981).  Therefore, the question of whether this Court has jurisdiction over the defendant is

determined by federal constitutional law.  See Mesalic v. Fiberfloat Corp., 897 F.2d 696, 698 (3d

Cir. 1990).

The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state

defendant only where "the defendant purposefully avails itself of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of its laws."  Burger

King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235

NOT FOR PUBLICATION

(1958)).  A court's exercise of jurisdiction can be either specific or general.

Specific jurisdiction is invoked when a claim is related to or arises out of the defendant's contacts with the forum.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Dollar Sav. Bank v. First Security Bank of Utah, 746 F.2d 208, 211 (3d Cir. 1984). A court must first determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (citations omitted). What constitutes minimum contacts varies with the "quality and nature of defendant's activity." Hanson, 257 U.S. at 253.  In assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum and the litigation."  Keeton v. Hustler, 465 U.S. 770 (1984).

Second, assuming minimum contacts have been established, a court may inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)); Pennzoil Prods. Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 201 (3d Cir. 1998).  For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state.  See World-Wide Volkswagen, 444 U.S. at 292.  To determine reasonableness, a court considers the following factors: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering substantive social policies.  See id.  Only in "rare cases [do the] minimum

-9-

NOT FOR PUBLICATION

requirements inherent in the concept of fair play and substantial justice . . . defeat the

reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum

activities." Asahi Metal Industry Co. v. Super. Ct. of Cal., 480 U.S. 102, 116 (1987).

     If the plaintiff cannot establish specific jurisdiction, a court may exercise general

jurisdiction over the defendant if the defendant has maintained "continuous and systematic

contacts" with the forum state. Helicopteros, 466 U.S. at 416. To establish general jurisdiction

the plaintiff must show significantly more than mere minimum contacts with the forum state.

See Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir.

1987). Moreover, the facts required to establish general jurisdiction must be "extensive and

persuasive." Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589

(3d Cir. 1982).

     Because Kiel did not address whether this Court has personal jurisdiction over Supriya in

its initial submissions in support of this motion, the Court ordered Kiel to provide additional

briefing and factual declarations on this issue. (Order (No. 83).) Kiel complied on October 31,

2008.

     The evidence submitted by Kiel demonstrates that Supriya has purposefully engaged in

activities directed towards the forum state. Supriya arranged for a direct shipment of the subject

Pyrilamine to Napp in New Jersey. (DeSimone Cert., Exs. 4, 5 (Nos. 84-5, 84-6).) Supriya has

also maintained an ongoing business relationship with Napp as evidenced by an e-mail exchange

in which Supriya solicited a meeting with Napp representative Keith Terraneo at its trade show in

Las Vegas. (Id. Ex. 2 (No. 84-3).) In accepting the meeting, Napp queried Supriya regarding the

testing for the Pyrilamine supplied to Kiel and separately requested quotes for other pharmaceutic

NOT FOR PUBLICATION

materials.  (Id.)  Two days later, Supriya responded with prices, availability, and terms for

delivery.  (Id.)  These activities demonstrate that Supriya purposefully availed itself of the

privileges of conducting activities in New Jersey.  See Burger King, 471 U.S. at 475 (quoting

Denckla, 357 U.S. 235).

        The Court also finds that the exercise of personal jurisdiction over Supriya would not

offend "traditional notions of fair play and substantial justice."  International Shoe, 326 U.S. at

320.  Although having to defend oneself in a foreign legal system is a heavy burden, that must be

balanced by the interests of the forum state, plaintiff's interest in obtaining relief, and "the

interstate judicial system's interest in obtaining the most efficient resolution of controversies; and

the shared interest of the several States in furthering fundamental substantive social policies."

World-Wide Volkswagen, 444 U.S. at 292.  Although the movant is not a New Jersey resident,

the plaintiff in this action is a New Jersey resident and has counterclaims remaining against

Supriya.  The several States certainly have an interest in protecting its consumers from foreign

made products, especially pharmaceutical products, that do not comply with safety standards.

Although the dispute between the parties primarily concerns breach of contract among the

parties, the principal cause of this dispute stemmed from Supriya's alleged omission in

complying with safety standards.  The balance of these factors persuades the Court that asserting

jurisdiction over Supriya would not be fundamentally unfair.  Accordingly, Supriya is within this

Court's jurisdiction.

        3.      Liability

        The record indicates that Supriya was served pursuant to Fed. R. Civ. P. 4(f)(3) and this

Court's May 2006 Order.  Supriya was served with this motion for entry of default judgment, and

**NOT FOR PUBLICATION**

its supporting documents, via Federal Express and e-mail (Certs. of Serv. (Nos. 80, 84-32, 88-4, 89-3).)  The Court is satisfied that Supriya has had ample notice of the Amended Third-Party Complaint and of the motion for entry of default judgment and have chosen not to respond.  The Court will treat the allegations as to liability in the Amended Third-Party Complaint as true and admitted by Supriya.

Kiel has pled seven alternative theories of recovery against Supriya: breach of contract, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, negligent misrepresentation, breach of covenant of good faith and fair dealing, and common law fraud.  Although allegations under each count vary slightly, all claims for relief arise from the same conduct: Supriya's delivery of nonconforming Pyrilamine.  If the Court finds that Kiel's allegations are sufficient to state a claim under one theory of recovery, the Court need not address other mutually exclusive, alternative theories.  See Gagliardo v. Connaught Labs., Inc., 311 F.3d 565, 570 (3d Cir. 2002). This is because "a plaintiff who 'presents a number of alternative legal theories, but whose recovery is limited to only one of them, has only a single claim."  Allegheny County Sanitary Auth. v. U.S.E.P.A., 732 F.2d 1167, 1172 (3d Cir. 1984).  This is true even where the alternative theory is contained in a separate claim or count.  See id. (separate counts considered to be one claim due to the counts having the same factual bases).

Kiel's allegations are factually and legally sufficient to support the breach of express warranty, the second count.  In June 2003, Kiel placed an order for Pyrilamine with Napp.  (Am. Third-Party Compl. ¶ 18 (No. 50).)  Napp filled that order with Pyrilamine manufactured by Supriya.  (Id. ¶ 19.)  In connection with that order, Supriya supplied a Certificate of Analysis

NOT FOR PUBLICATION

("Certificate") which stated that the Pyrilamine conformed to specifications.  (Id. ¶ 17, Ex. A.)

Kiel reasonably relied on the Certificate and used the Pyrilamine to manufacture medications.

(Id. ¶ 83.)  During the final testing of its finished products, Kiel discovered that the Pyrilamine

did not conform to the specifications as represented in the Certificate.  (Id. ¶¶ 23-24.)  As a

result, Kiel was forced to destroy the finished products and was unable to meet committed

purchase orders.  (Id. ¶¶ 84-85.)   Kiel provided the requisite notice to Napp, who in turn

informed Supriya, that the Pyrilamine was defective in late 2003.  (Id. ¶ 31.)  Kiel has

demonstrated that Supriya breached its express warranty with regards to the Pyrilamine.  Because

the Court finds that Kiel has established such grounds to prevail on that theory of recovery, it will

not address Kiel's other theories of recovery.

### 2.    Damages

The only allegations in a complaint that are not treated as true upon consideration of a

motion for default judgment are those pertaining to the amount of damages.  See Comdyne, 908

F.2d at 1149.  Under Fed. R. Civ. P. 55(b)(2), a district court "may conduct such hearings or

order such references as it deems necessary and proper" in order "to determine the amount of

damages."  Id.

Here, Kiel has pled damages in the amount of "$1,177,745 in out-of-pocket expenses for

the manufacture of the final drug product containing the out-of-specification Pyrilamine" and

$2,804,915 in lost profits.  In addition, Kiel seeks interest, costs, and attorneys' fees.

### A.  Costs Incurred

By the time Kiel had discovered that the Pyrilamine was defective, it had already incurred

significant costs in manufacturing various drugs using the Pyrilamine.  (Am. Third-Party Compl.

**NOT FOR PUBLICATION**

¶¶ 84-85 (No. 50.)  Under U.C.C. § 2-714 and § 2-715, a buyer may recover consequential damages from the seller's breach of warranty.  N.J. Stat. Ann. 12A:2-715.[3]  Consequential damages include "injury to person or property proximately resulting from any breach of warranty."  Id.; see also Collins v. Uniroyal, Inc., 126 N.J. Super. 401, 406, 315 A.2d 30 (1973).  The comments to Section 2-715 advises that "[w]here the injury involved follows the use of goods without discovery of the defect causing the damage, the question of "proximate" cause turns on whether it was reasonable for the buyer to use the goods without such inspection as would have revealed the defects."  N.J. Stat. Ann. 12A:2-715, cmt. 5.  Kiel alleges that drug manufacturers were "expected" to rely on certificates supplied by the seller that attest to the specifications of the raw materials rather than perform extensive testing.  (Am. Third-Party Compl. ¶ 17 (No. 50).)  Accepting this as true, the Court finds that it was reasonable for Kiel to use the Pyrilamine without further testing.  In addition, it was foreseeable that a defective raw material would do damage to the resulting products.  Accordingly, awarding Kiel for the costs incurred to manufacture the drugs it ultimately had to discard is appropriate.

Kiel presented a spreadsheet detailing the types and amounts of costs expended to manufacture each of the Kiel products that incorporated Pyrilamine as an ingredient.  (Mortensen Cert., ¶ 5 & Ex. 1 (No. 84).)  According to the spreadsheet, Kiel incurred $357,364 in raw material costs, $166,313 in packaging, $186,930 in labor, $264,897 in manufacturing overhead, and $202,241 in quality control and assurance.  (Id.)  Kiel had to destroy the finished medications

---

[3]  The Court assumes, without deciding, that New Jersey law applies to this case given that much of the transaction regarding the Pyrilamine occurred in New Jersey.  Kiel has not suggested that laws of another state should apply.  In any event, the relevant laws of Georgia (Kiel's home state) are identical or nearly identical to the New Jersey counterparts.

**NOT FOR PUBLICATION**

because of the failing data, (id. ¶ 5; Am. Third-Party Compl. ¶ 51); in other words, Kiel could not

recoup any salvage value for these medications.  The Court also held a hearing pursuant to Fed.

R. Civ. P. 55(b)(2)(B) on December 4, 2008 and heard sworn testimony from Kiel's Chief

Financial Officer regarding these losses.  Kiel has sufficiently demonstrated that Supriya's breach

caused Kiel damages in the amount of $1,177,745.

### B. Lost Profits

As a result of Supriya's breach, Kiel claims that Supriya also caused Kiel to forgo sales of

its drug products.  As evidence, Kiel has submitted distribution agreements with two drug

distributors which obligated Kiel to supply, and the distributors to purchase, certain quantities of

drugs containing Pyrilamine at an agreed-upon price as well as certain purchase orders.

(Mortensen Cert., Exs. 2-9.)

U.C.C. § 2-715 allows recovery of lost profits if the "loss resulting from general or

particular requirements and needs of which the seller at the time of contracting had reason to

know and which could not reasonably be prevented by cover or otherwise."  N.J. Stat. Ann.

12A:2-715.  Kiel generally alleges that Supriya had reason to know that Kiel would incorporate

the Pyrilamine into final drug products.  (Id. ¶ 67.)  But Kiel has alleged no facts in the Amended

Third-Party Complaint that it was unable to prevent the loss of sales by cover, that is, replace the

defective drug products by manufacturing new ones with conforming Pyrilamine.  The only

assertion that Kiel has made with regards to its inability to replace the products is found in its

brief where Kiel states that it was unable to "fill its customer orders for cough suppressant during

that year's cold season."  (Br. at 1 (No. 78).)  More to the point, Kiel has failed to allege or

produce evidence that it made Supriya aware (or for that matter, allege any other facts to impute

-15-

NOT FOR PUBLICATION

knowledge to Supriya) of its particular need to produce medications for the cold season and that

Supriya's breach could cause Kiel to lose significant amount of sales.  Lack of such allegations is

fatal to Kiel's claim for lost profits.

### C.      Interest, Costs, and Attorney's Fees

Kiel also seeks pre- and post-judgment interest, costs, and attorney fees.  (Am. Third-

Party Compl. at 19 (No. 50); Mortensen Cert., ¶ 12 (No. 84-22).)  Under New Jersey law, "the

award of prejudgment interest for claims arising in contract is subject to the discretion of the trial

court." Cooper Distrib. Co. v. Amana Refrigeration, Inc., 63 F.3d 262, 284 (3d Cir. 1995) (citing

Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 478 (1988)).  Pre-judgment interest is

awarded in order "to indemnify the claimant for the loss of what the moneys due him would

presumably have earned if the payment had not been delayed."  Id.  (quoting Ellmex Constr. Co.

v. Republic Ins. Co. of Am., 202 N.J. Super. 195, 212-13 (App. Div. 1985)).  The "basic

consideration" in awarding pre-judgment interest is "that the defendant has had the use, and the

plaintiff has not, of the amount in question; and the interest factor simply covers the value of the

sum awarded for the pre-judgment period during which the defendant had the benefit of money

to which the plaintiff is found to have been earlier entitled."  County of Essex v. First Union

Nat'l Bank, 186 N.J. 46, 61, 8941 A.2d 600 (2006).

Here, because Kiel has been denied use of its money, awarding pre-judgment interest is

appropriate.  One of the remaining issues is at what rate the court will award pre-judgment

interest.  N.J. Ct. R. 4:42-11(b) governs the rate of pre-judgment interest.[4]  As noted, New Jersey

---

[4] Although N.J. Ct. R. 4:42-11(b) addresses only tort judgments, the comments to the
rule make clear that prejudgment interest may be awarded on contract claims in the court's

-16-

NOT FOR PUBLICATION

case law makes it clear that the rate at which pre-judgment interest is calculated for contract claims is within the discretion of the court.   Spencer v. Long Valley Inn, Inc., 2005 WL 3488033, at *6 (N.J. Super. Ct. App. Div. Dec. 22, 2005).  Absent unusual circumstances, however, trial courts should refer to N.J. Ct. R. 4:42-11(b) when determining the rate of pre-judgment interest to be awarded.  See Benevenga v. Digregorio, 325 N.J. Super. 27, 35, 737 A.2d 696 (App. Div. 1999).  Here, there are no unusual circumstances and the Court will award pre-judgment interest at the rate stipulated by N.J. Ct. R. 4:42-11(b).

N.J. Ct. R. 4:42-11(a)(iii) states that interest will be calculated "for judgment exceeding the monetary limit of the Special Civil Part . . . at a rate provided for in subparagraph (a)(ii) plus 2% annum." Id.  The judgment in this case exceeds the Special Civil Part monetary limit of $15,000.00, so 2% annum will be added to the "average rate of return . . . for the corresponding preceding fiscal year . . . of the State of New Jersey Cash Management Fund."  N.J. Ct. R. 4:42-11(a)(ii).  The trial court, in its discretion, also determines the date on which prejudgment interest starts to accrue in contract and other commercial cases.  See County of Essex v. First Union, 186 N.J. 46, 61-62 (2006).  The Court will award prejudgment interest from the date that Supriya was formally served with process, June 2, 2006.  Accordingly, the interest rates to be awarded from June 2, 2006 to the current date are 4.0%, 6.0%, and 7.5% respectively for the calender years 2006, 2007, and 2008.  The appropriate amount of interest to be awarded for 2006 is $27,362.40, for 2007 is $70,664.70, and for 2008 is $83,732.83.[5]  Pre-judgment interest on the costs incurred

---

discretion.  N.J. Ct. R. 4:42-11(b), cmt. 3.1.

[5] Interest is calculated as follows. For the year 2006, the interest rate is 4.0% per annum. 4.0% of $1,177,745 is $47,109.80.  That amount divided by 365 days in a year, equals the

**NOT FOR PUBLICATION**

as a result of Supriya's breach is awarded in the amount of $181,759.93.  The Court also awards

post-judgment interest to be calculated pursuant to N.J. Ct. R. 4:42-11(a)(i)-(iii).

> **D.      Costs and Attorney's Fees**

Fed. R. Civ. P. 54(d)(1) states "costs – other than attorney's fees – should be allowed to

the prevailing party."  The Court will allow Kiel to recover costs incurred to bring this motion.

While Fed. R. Civ. P. 54(d) does not automatically award attorney's fees to the prevailing

party, the Rule provides a mechanism by which the prevailing party can recover them.  Fed. R.

Civ. P. 54(d)(2) allows for the prevailing party to request attorney's fees by motion within

fourteen days after the entry of judgment.  The motion must specify the case law, statute, rule, or

other ground entitling the movant to the award and state the amount of attorney's fees sought.

Here, Kiel argues that Supriya has acted in bad faith for failing to defend this action and

that the Court should award attorneys' fees to Kiel as sanctions for Supriya's conduct.  Kiel's

arguments are without merit.  Failing to defend an action is not the sort of conduct that the

Supreme Court  has approved the use of sanctions.  Upon being served a complaint, a defendant

may decide "bas[ed] on the relief requested in the original pleading whether to expend the time,

effort, and money necessary to defend in the action."  10A Wright, et al., Federal Practice &

Procedure § 2663 (3d ed. 1999).  It is not bad faith to exercise such rational choice.  The Court

---

amount of interest due per diem, $129.07.  The per diem total is multiplied by 212, the number of
days interest accrued in 2006, for total interest in 2006 of $27,362.40.  For the year 2007, since
interest accrued for the entire year, the interest rate of 6.0% annum yields $70,664.70 in total
interest. For the year 2008 the interest rate is 7.5%.  7.5% of $ 1,177,745 is $88,330.88.  That
amount divided by 366 days in a year, equals the amount of interest due per diem, $242.  The per
diem total is multiplied by 346 days, the number of days interest accrued in 2008, for total
interest in 2008 of $83,732.83.  These totals added together equal $181,759.93 due in pre-
judgment interest.

**NOT FOR PUBLICATION**

further rejects Kiel's argument that this Court impose attorneys' fees as sanctions for failing to

answer interrogatories.  The sole case cited by Kiel is inapposite.  The court in <u>Fritz v. Honda</u>

<u>Motor Co., Ltd.</u>, 818 F.2d 924, 925 (D.C. Cir. 1987) imposed attorneys fees as sanctions for

vexatious conduct, not for mere failure to answer interrogatories.  Kiel has presented no evidence

that Supriya has acted vexatiously.  Accordingly, the Court declines to award Kiel attorney's

fees.

## CONCLUSION

For the stated reasons, Kiel's motion for default judgment is granted.  The amount of the

judgment ($1,177,745 plus pre-judgment interest of $181,759.93) will be offset by the amount of

net settlement received by Kiel from the settling third-party defendants and counter-defendant

($300,000).  Judgment is entered against Supriya Chemicals in the amount of $1,059,504.93 plus

costs and post-judgment interest.  The Clerk of the Court is requested to enter default against

Third-Party Defendant Supriya Chemicals pursuant to Fed. R. Civ. P. 55(a).


**s/ William H. Walls**
United States Senior District Judge

**NOT FOR PUBLICATION**

**Appearances:**

Thomas R. DeSimone
Gibbons P.C.
One Pennsylvania Plaza, 37th Floor
New York, NY 10119-3701

Michale Cukor
Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310

          Attorneys for Defendant/Third-Party Plaintiff Kiel Laboratories,
          Inc.